[Cite as *State v. Votaw*, 2024-Ohio-5349.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-64 |
| | : | |
| v. | : | Trial Court Case No. 22-CR-0837 |
| | : | |
| BENJAMIN ADAM VOTAW | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 8, 2024

. . . . . . . . . . .

ROBERT C. LOGSDON, Attorney for Appellant

JOHNNA M. SHIA, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Appellant Benjamin Adam Votaw appeals from his conviction in the Clark County Court of Common Pleas after he pled no contest to one count of murder with a firearm specification. In support of his appeal, Votaw asserts that his statutory right to a

speedy trial under R.C. 2945.71 was violated and that the trial court erred by failing to dismiss his case on that basis. Votaw also asserts that his no contest plea was rendered invalid because the trial court induced him to enter that plea during the plea-negotiation process. For the reasons outlined below, we disagree with Votaw's claims and will affirm the judgment of the trial court.

**Facts and Course of Proceedings**

{¶ 2} On November 15, 2022, a Clark County grand jury indicted Votaw on single counts of aggravated murder, murder, felonious assault, and felony murder. All of the charges except for aggravated murder included a firearm specification. The charges stemmed from allegations that on the night of November 6, 2022, Votaw shot and killed his father at a residence in Springfield, Ohio. Votaw was placed in custody on November 7, 2022, and remained incarcerated during the pendency of his case.

{¶ 3} Votaw filed a demand for discovery the same day he was indicted. The State submitted its discovery responses 56 days later on January 10, 2023. Prior to that, on December 20, 2022, Votaw filed a motion requesting an extension of time to file pretrial motions because the State had not yet provided discovery. Votaw, however, withdrew that motion in January 2023 after the State submitted its discovery responses. The State continually supplemented its discovery responses throughout the proceedings, as the discovery in Votaw's case was voluminous.

{¶ 4} On January 25, 2023, the trial court held a hearing to discuss whether Votaw would agree to waive the disqualification of the judge assigned to his case—Judge Brian

Driscoll—due to a conflict of interest and possible bias. The conflict and possible bias arose because Judge Driscoll was, at the time, a newly-elected judge who had previously served as Clark County's prosecuting attorney when Votaw was indicted. In addition, Judge Driscoll's brother was the newly elected prosecuting attorney for Clark County.

{¶ 5} During the waiver hearing, Votaw indicated that he did not have an issue with Judge Driscoll presiding over his case, but that he would not agree to sign a waiver of any perceived bias by the court. Given Votaw's decision, on January 26, 2023, Judge Driscoll recused himself from Votaw's case and referred the case to the court's administrative judge, Judge Thomas Capper. Judge Driscoll's recusal entry noted that Votaw's trial was scheduled for January 31, 2023.

{¶ 6} On February 7, 2023, Judge Capper filed an entry assigning Votaw's case to another Clark County judge, Judge Douglas Rastatter. However, on February 10, 2023, Judge Rastatter filed an entry declining the assignment due to his full docket. In the entry, Judge Rastatter explained that his full docket prohibited him from affording the time and attention necessary for such a "serious and complex criminal case[.]" Accordingly, Judge Rastatter transferred the case back to Judge Capper for assignment to another judge.

{¶ 7} Because Judge Capper and all the other Common Pleas Court judges in Clark County were unable to add Votaw's case to their docket due to their extremely busy caseload, on February 17, 2023, Judge Capper submitted an "IGOR request" through the Supreme Court of Ohio's website to apply for the assignment of a visiting judge. Evidentiary Hearing Tr. (Aug. 28, 2023), p. 14. The same day, Judge Capper sent a

letter regarding the request and the reasons therefore to the Supreme Court's Judicial Assignment Specialist, the Manager of the Supreme Court's Case Management Section, and the Director of the Ohio Board of Professional Conduct. The IGOR request and Judge Capper's accompanying letter advised the Supreme Court of the date of Votaw's indictment, the fact that Votaw was incarcerated, and all the reasons why a visiting judge was needed.

{¶ 8} After approximately four months, on June 13, 2023, Judge Capper followed up with the Supreme Court about his IGOR request and letter. In doing so, Judge Capper spoke with the Supreme Court's then newly-elected Chief Justice on the phone. During that conversation, the Chief Justice instructed Judge Capper to resubmit the IGOR request and his letter. Although Judge Capper had used the same format that he had successfully used in the past to request visiting judges, the Chief Justice advised Judge Capper that some aspect of his IGOR request "did not suffice." *Id.* at 22. Judge Capper did not understand what aspect of the IGOR request was insufficient and did not want to debate it with Chief Justice, so he simply resubmitted the IGOR request and his accompanying letter the same day. According to Judge Capper, the resubmitted request was similar to and contained the same information that he had originally submitted to the Supreme Court.

{¶ 9} After Judge Capper's IGOR request and letter were resubmitted to the Supreme Court, on June 15, 2023, the Supreme Court assigned a retired judge—Judge Jonathan Hein—to preside over Votaw's case. Prior to that assignment, on March 27, 2023, and April 7, 2023, Votaw filed motions to dismiss his case on statutory-speedy-trial

grounds. Within 12 days of being assigned to the case, Judge Hein issued a decision on June 27, 2023, overruling Votaw's speedy-trial motions.

{¶ 10} During a status conference held on July 18, 2023, Votaw orally moved the trial court to reconsider its decision overruling his speedy-trial motions and requested an evidentiary hearing on the matter. In response, the trial court scheduled an evidentiary hearing for August 14, 2023. However, on August 11, 2023, Votaw moved to continue that hearing date, and the trial court rescheduled the hearing for August 28, 2023.

{¶ 11} At the evidentiary hearing, Votaw called Judge Capper as a witness. During his testimony, Judge Capper discussed Judge Driscoll's having recused himself from Votaw's case, Judge Rastatter having declined his assignment to Votaw's case, and the actions he had taken with the Supreme Court of Ohio to request the assignment of a visiting judge. Following the evidentiary hearing, Votaw orally asked the trial court to permit the filing of responsive briefs on issues raised during the evidentiary hearing. In response, the trial court issued an order permitting the parties to file responsive briefs by September 8, 2023, and to file any replies by September 12, 2023.

{¶ 12} On September 8, 2023, Votaw filed a supplemental memorandum in support of his motion for reconsideration of the trial court's decision overruling his speedy-trial motions. The State did not file a reply. On September 26, 2023, the trial court issued its reconsideration decision in which it once again overruled Votaw's speedy-trial motions. Votaw's case then proceeded to its October 24, 2023 trial date.

{¶ 13} Instead of going to trial, on October 24, 2023, Votaw entered a no contest plea to one count of murder in violation of R.C. 2903.01(A) and a three-year firearm

specification. In exchange for Votaw's no contest plea, the State agreed to dismiss all the other charges and specifications in the indictment. Following a plea colloquy, the trial court accepted Votaw's no contest plea and found him guilty of murder and the associated firearm specification. Thereafter, the trial court sentenced Votaw to serve a total of 18 years to life in prison.

{¶ 14} Votaw now appeals from his conviction, raising two assignments of error for review.

**First Assignment of Error**

{¶ 15} Under his first assignment of error, Votaw asserts that the trial court erred by not dismissing his case on statutory speedy-trial grounds pursuant to R.C. 2945.71. We disagree.

*Standard of Review*

{¶ 16} "Review of a speedy-trial claim involves a mixed question of law and fact. Therefore, we defer to the trial court's factual findings if they are supported by competent, credible evidence, but we review the application of the law to those facts de novo." (Citation omitted.) *State v. Long*, 2020-Ohio-5363, ¶ 15; *accord State v. Knott*, 2024-Ohio-2289, ¶ 15 (2d Dist.). "De novo review requires an 'independent review of the trial court's decision without any deference to the trial court's determination.' " *State v. Clay*, 2016-Ohio-424, ¶ 5 (2d Dist.), quoting *Jackson v. Internatl. Fiber*, 2006-Ohio-5799, ¶ 17 (2d Dist.).

*Statutory Speedy-Trial Law*

**{¶ 17}** The Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article 1 of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial by the state. *State v. O'Brien*, 34 Ohio St.3d 7, 8 (1987). The constitutional right to a speedy trial is statutorily enforced in Ohio by the provisions of R.C. 2945.71 et seq. *State v. Adams*, 43 Ohio St.3d 67, 68 (1989). Pursuant to R.C. 2945.71, a person charged with a felony offense "shall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(C)(2). However, "[e]ach day the accused is held in jail in lieu of bail is counted as three days." *State v. Harris*, 2023-Ohio-648, ¶ 12 (2d Dist.), citing R.C. 2945.71(E). Therefore, if the accused is incarcerated the entire time preceding trial, the time limit for bringing the accused to trial is reduced to 90 days. *State v. Dankworth*, 2007-Ohio-2588, ¶ 31 (2d Dist.).

**{¶ 18}** "A defendant establishes a prima facie speedy trial violation when his motion [to dismiss] reveals that a trial did not occur within the time period prescribed by R.C. 2945.71." *State v. Hill*, 2020-Ohio-2958, ¶ 6 (2d Dist.), citing *State v. Butcher*, 27 Ohio St.3d 28, 31 (1986). "If a defendant 'establishes a prima facie case of a violation of his right to a speedy trial, the burden then shifts to the State' to demonstrate either that the statutory limit was not exceeded, or that the State's time to bring the defendant to trial was properly extended." *State v. Wagner*, 2021-Ohio-1671, ¶ 12 (2d Dist.), quoting *State v. Nichols*, 2005-Ohio-1771, ¶ 11 (5th Dist.), citing *Butcher* at 30-31. Speedy-trial time may be extended/tolled for a number of circumstances listed under R.C. 2945.72(A)

through (J).

*R.C. 2945.72(E)*

**{¶ 19}** Pursuant to R.C. 2945.72(E), speedy-trial time is tolled for: "Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused." R.C. 2945.72(E). To qualify as a tolling event under R.C. 2945.72(E), "all that the statute requires is that the delay be necessitated by the defendant's action." *State v. Belville*, 2022-Ohio-3879, ¶ 31. Therefore, "[a]ny period of delay necessitated by a defendant's own motion automatically acts as a tolling event." *State v. Whitfield*, 2023-Ohio-240, ¶ 29 (2d Dist.), citing *Belville* at ¶ 31. For example, a defendant's motion to dismiss on speedy trial grounds will toll speedy trial time pursuant to R.C. 2945.72(E). *State v. Cimpaye*, 2020-Ohio-2740, fn. 7 (2d Dist.), citing *State v. Bickerstaff*, 10 Ohio St.3d 62, 67 (1984) ("a motion to dismiss acts to toll the time in which a defendant must be brought to trial . . . [t]herefore, the time that elapsed while [such] motions [are] pending is not included for purposes of R.C. 2945.71").

**{¶ 20}** A defendant's demand for discovery also constitutes a tolling event under R.C. 2945.72(E). *Knott*, 2024-Ohio-2289, at ¶ 22 (2d Dist.), citing *State v. Brown*, 2002-Ohio-7040, syllabus. (Other citations omitted.) "Such demands toll speedy-trial time for a reasonable period to allow the state an opportunity to respond." *Id.*, citing *State v. Palmer*, 2007-Ohio-374, ¶ 23 and *State v. Marbury*, 2011-Ohio-879, ¶ 12 (2d Dist.). "Courts have generally interpreted 30 days to constitute a reasonable period to respond to requests for discovery[.]" *State v. Smith*, 2017-Ohio-7864, ¶ 23 (4th Dist.), citing *State*

*v. Shabazz*, 2011-Ohio-2260, ¶ 26 (8th Dist.) and *State v. Ford*, 2009-Ohio-146, ¶ 8-11 (1st Dist.).   The Supreme Court of Ohio, however, has "never set forth a precise number of days in which the state must respond to a discovery request for purposes of tolling." *Belville* at ¶ 20.   Rather, the Supreme Court explained that: "What is reasonable will necessarily be a case-by-case determination and depend on the totality of the circumstances.   It might be influenced, for instance, by the complexity of the discovery requested, the good or bad faith of the state, or the steps the state must take to comply with the request."   *Id*. at ¶ 21.

**{¶ 21}** In *Belville*, the Supreme Court found that 43 days was a reasonable amount of time for the State to respond to the defendant's discovery requests under circumstances where the State had to copy and deliver the contents of a digital video recorder ("DVR") to the defense.   *Id*. at ¶ 3 and ¶ 23.   In so holding, the Supreme Court considered the fact that the State kept the defense and trial court updated on the steps it was taking to make the DVR footage available to the defense.   *Id*. at ¶ 23.   The Supreme Court also considered that the State had a discussion with the defense about what would be the most efficient way to produce the discovery and that the defense never complained about the pace of the State's production.   *Id*.   *Compare Ford* at ¶ 8-10 (1st Dist.) (finding that there was nothing about defendant's "run-of-the-mill drug case" that necessitated a 67-day period for the State to provide discovery).

*R.C. 2945.72(H)*

**{¶ 22}** Pursuant to R.C. 2945.72(H), speedy-trial time is also tolled for: "The period

of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." Therefore, "[c]ontinuances that a defendant requests toll the clock under R.C. 2945.75(H)[.]" *State v. Lewis*, 2021-Ohio-1895, ¶ 35 (2d Dist.). In contrast, "[c]ontinuances that are granted at the State's request or that are ordered sua sponte by the trial court must be reasonable to toll speedy-trial time." *State v. Sweeney*, 2024-Ohio-3425, ¶ 23, citing *State v. King*, 70 Ohio St.3d 158, 162 (1994), *State v. Knight*, 2005-Ohio-3179, ¶ 30 (2d Dist.), and *State v. Stamps*, 127 Ohio App.3d 219, 224 (1st Dist. 1998). " 'If they are not reasonable, both types of continuances must be charged against the state for speedy-trial purposes.' " *Id.*, quoting *Stamps* at 224.

{¶ 23} "In interpreting R.C. 2945.72(H), the Supreme Court has held: 'Ideally, "[w]hen sua sponte granting a continuance under R.C. 2945.72(H), the trial court must enter the order of continuance and the reasons therefor by journal entry prior to the expiration of the time limit prescribed in R.C. 2945.71 for bringing a defendant to trial." ' " *State v. Mathews*, 2020-Ohio-5249, ¶ 18 (10th Dist.), quoting *State v. Ramey*, 2012-Ohio-2904, ¶ 32, quoting *State v. Mincy*, 2 Ohio St.3d 6 (1982), syllabus. "The Supreme Court has further held, however, that 'an appellate court may affirm a conviction challenged on speedy-trial grounds even if the trial court did not expressly enumerate any reasons justifying the delay when the reasonableness of the continuance is otherwise affirmatively demonstrated by the record.' " *Id.*, quoting *Ramey* at ¶ 33.

{¶ 24} "The question of whether a continuance is reasonable 'depends on the peculiar facts and circumstances of a particular case' and therefore must be reviewed on

a case-by-case basis." *Sweeney* at ¶ 24, quoting *State v. Saffell*, 35 Ohio St.3d 90, 91 (1988). (Other citation omitted.) "For the continuance to toll speedy trial time, '[t]he record must reflect that the continuance was "reasonable in both purpose and length." ' " *Id.*, quoting *State v. Martin*, 56 Ohio St.2d 289, 293 (1978), quoting *State v. Lee*, 48 Ohio St.2d 208, 210 (1976). " 'Reasonableness is strictly construed against the State.' " *State v. Gavin*, 2011-Ohio-4665, ¶ 34 (2d Dist.), quoting *Knight* at ¶ 30, citing *State v. Singer*, 50 Ohio St.2d 103, 109 (1977).

{¶ 25} Multiple courts have held that "[a] trial judge's recusal constitutes reasonable cause to continue a trial." *State v. Smith*, 2023-Ohio-1504, ¶ 34 (4th Dist.), citing *State v. Nichols*, 2013-Ohio-308, ¶ 21 (4th Dist.), citing *Lyndhurst v. Di Fiore*, 2007-Ohio-3538, ¶ 10 (8th Dist.). Indeed, " '[o]nce a judge recuses himself from further dealings in the matter, the judge no longer has authority to act concerning the case.' " *Papandreas v. KNL Custom Homes, Inc.*, 2016-Ohio-5136, ¶ 19 (8th Dist.), quoting *Seed Consultants, Inc. v. Schlichter*, 2012-Ohio-2256, ¶ 31 (12th Dist.) (Other citations omitted.). Therefore, "the absence of any judge to preside over the matter must necessarily toll the time and falls under R.C. 2945.72(H) for any reasonable continuance." *Euclid v. Amiott*, 2024-Ohio-1583, ¶ 14 (8th Dist.), citing *Lyndhurst* at ¶ 10; *accord Nichols* at ¶ 21 (holding that the trial judge's recusal "tolled the speedy-trial time until a new judge could be assigned").

*Statutory Speedy-Trial Analysis*

{¶ 26} In this case, there is no dispute that Votaw was incarcerated the entire time

preceding his no contest plea. Therefore, the triple count provision set forth in R.C. 2945.71(E) applied to make the statutory speedy-trial time limit 90 days. There is also no dispute that Votaw was arrested on November 7, 2022, and that his speedy-trial time began to run the following day. This means the State had until February 6, 2023, to bring Votaw to trial. The record, however, establishes that there were several tolling events that extended the February 6 deadline.

{¶ 27} The first tolling event occurred when Votaw filed a demand for discovery on November 15, 2022. *See* R.C. 2945.72(E). Only eight days of speedy-trial time had elapsed before that tolling event. As previously discussed, a discovery demand "toll[s] speedy-trial time for a reasonable period to allow the state an opportunity to respond." *Knott*, 2024-Ohio-2289 at ¶ 22 (2d Dist.), citing *Palmer*, 2007-Ohio-374, at ¶ 23 and *Marbury*, 2011-Ohio-879, at ¶ 12 (2d Dist.). In this case, the State submitted its initial discovery responses to the defense on January 10, 2023, 56 days after Votaw filed his demand for discovery. The State then supplemented those responses on January 25, 2023.

{¶ 28} In the January discovery responses, the State produced several warrants, reports, Facebook records, ADT surveillance video clips, 9-1-1 calls, and witness statements. The State also produced a Station One video, four witness interviews, and hundreds of photographs. In addition, the State had an officer extract data from Votaw's and the victim's cell phones and then made that data available to the defense shortly after the extraction process was completed on February 20, 2023. On February 28, 2023, the State invited the defense to view the data at its office or to provide the State with an

external hard drive onto which the data could be downloaded. The defense did not provide a sufficient external hard drive for downloading the data until April 25, 2023.

{¶ 29} When considering the large amount of discovery and the type of evidence that was produced by the State, and when considering that Votaw's case involved a complex murder investigation, we find that the State's initial 56-day response time was reasonable. In so holding, we find it significant that Votaw never filed a motion to compel discovery from the State or otherwise complained about the pace of the State's production. Instead, Votaw simply filed a motion on December 20, 2022, asking the trial court to extend the scheduled motions deadline—a request that Votaw withdrew the day after the State submitted its initial discovery responses. The lack of a motion to compel or other complaint by Votaw about the pace of the State's production suggests that Votaw did not believe the State was acting in bad faith with respect to discovery. Because of that, and because of the complexity of the case and the large amount of discovery, we find that at least 56 days of speedy-trial time were tolled as a result of Votaw's discovery request. In other words, time was tolled from November 15, 2022, to January 10, 2023, meaning that Votaw's speedy-trial time began running again on January 11.

{¶ 30} A second tolling event occurred 16 days later on January 26, 2023, when Judge Driscoll filed an entry recusing himself from Votaw's case. *See* R.C. 2945.72(H). Votaw correctly argues that Judge Driscoll's recusal entry did not expressly continue his trial, which was scheduled for January 31, 2023. However, the record established that, due to an overcrowded docket, there was no Clark County judge available to preside over Votaw's case, and that Clark County's administrative judge, Judge Capper, had to submit

a request with the Supreme Court of Ohio to have a visiting judge assigned. In other words, there was an absence of any judge to preside over Votaw's case on the January 31 trial date.

{¶ 31} As previously discussed, "the absence of any judge to preside over the matter must necessarily toll the time and falls under R.C. 2945.72(H) for any reasonable continuance." *Amiott*, 2024-Ohio-1583, at ¶ 14 (8th Dist.), citing *Lyndhurst*, 2007-Ohio-3538, at ¶ 10 (8th Dist.). Therefore, the trial court's January 26 recusal entry necessarily tolled Votaw's speedy-trial time pursuant to R.C. 2945.72(H). Because 16 days of speedy-trial time elapsed between the January 10 discovery responses and the January 26 recusal entry, the total speedy-trial calculation is now at 24 days (8 + 16 = 24).

{¶ 32} The tolling of time caused by a judge's recusal ends when a new judge is assigned. *Nichols*, 2013-Ohio-308, at ¶ 21 (4th Dist.); *Amiott*, 2024-Ohio-1583, at ¶ 15 (8th Dist.). The Supreme Court of Ohio assigned Judge Hein to Votaw's case on June 15, 2023, which was approximately four months (118 days) after Judge Capper made the initial request for a visiting judge. The record establishes that Judge Capper first made a timely attempt to assign Votaw's case to another Clark County judge, Judge Rastatter, on February 7, 2023. However, that assignment was declined by Judge Rastatter on February 10, 2023, due to his overcrowded docket. Thereafter, on February 17, 2023, Judge Capper sent a timely IGOR request and letter to the Supreme Court of Ohio applying for the assignment of a visiting judge. We find it significant that Judge Capper testified that he had used the same application format that he had successfully used in the past to request a visiting judge, but was later instructed by the Supreme Court's Chief

Justice, who was newly elected in November 2022, to resubmit the application on June 13, 2023. The record therefore indicates that the four-month delay in having a visiting judge assigned to Votaw's case was primarily due to new administrative processes being put into place following the election of a new Supreme Court Chief Justice. Under these specific circumstances, we find that the four-month tolling period caused by the recusal was reasonable.

{¶ 33} In any event, there were other tolling events that occurred during the four-month recusal tolling period. Specifically, the speedy-trial motions to dismiss filed by Votaw on March 27and April 7, 2023, tolled speedy-trial time pursuant to R.C. 2945.72(E). *See Cimpaye*, 2020-Ohio-2740, at fn. 7 (2d Dist.), citing *Bickerstaff*, 10 Ohio St.3d at 67. The tolling event caused by those motions was in effect until Judge Hein overruled the motions on June 27, 2023. Accordingly, zero days of speedy-trial time elapsed between the January 26 recusal entry and the June 27 decision overruling Votaw's speedy-trial motions to dismiss. Speedy-trial time then began to run again on June 28, 2023.

{¶ 34} Another tolling event occurred 21 days later on July 18, 2023, when Votaw filed a motion for the trial court to reconsider its decision overruling his speedy-trial motions and requested an evidentiary hearing on the matter. *See* R.C. 2945.72(E). Because 21 days of speedy-trial time elapsed between June 27 and July 18, the total speedy-trial calculation is now at 45 days (8 + 16 + 21 = 45).

{¶ 35} The evidentiary hearing on Votaw's motion to reconsider was originally scheduled for August 14, 2023, but Votaw moved to have it continued to August 28, 2023—a delay that was attributable to Votaw. *See* R.C. 2945.72(E). Following the

evidentiary hearing, Votaw requested permission to brief certain issues that arose during the hearing. This resulted in the trial court's setting a briefing schedule in which it ordered the parties to file responsive briefs on September 8, 2023, and any replies by September 12, 2023. This further delayed the trial court's reconsideration decision—a delay that was once again attributable to Votaw. The trial court thereafter issued its decision overruling Votaw's motion for reconsideration on September 26, 2023.

**{¶ 36}** As a result of Votaw's motion for reconsideration and request for an evidentiary hearing, zero days of speedy-trial time elapsed between July 18, 2023, and September 26, 2023. *See* R.C. 2945.72(E). Speedy-trial time then resumed running on September 27. Votaw entered his no contest plea on October 24, 2023. Therefore, 28 days of speedy-trial time elapsed between September 26 and October 24, making the total speedy-trial calculation 73 days (8 + 16 + 21 + 28 = 73).

**{¶ 37}** Because Votaw entered his no contest plea within the 90-day statutory time limit, Votaw's statutory right to a speedy trial was not violated. The foregoing analysis supporting that decision is summarized in the table shown below.

| Date: | Event: | Speedy-Trial Days Counted: |
|---|---|---|
| Nov. 7, 2022 | Votaw is arrested. | 0 days |
| Nov. 15, 2022 | Votaw serves discovery demand on the State. *Speedy-trial time is tolled pursuant to R.C. 2945.72(E).* | 8 days (Nov. 8 to Nov. 15) |
| | | |

| Jan. 10, 2023 | The State submits its initial discovery response to Votaw.<br><br>*Speedy-trial time resumes running on Jan. 11.* | 0 days |
| --- | --- | --- |
| Jan. 26, 2023 | The trial court judge recuses himself from Votaw's case.<br><br>*Speedy-trial time is tolled pursuant to R.C. 2945.72(H).* | 16 days (Jan. 11 to Jan. 26) |
| Mar. 27, 2023 | Votaw files a speedy-trial motion to dismiss.<br><br>*Secondary tolling event; speedy-trial time is tolled pursuant to R.C. 2945.72(E).* | 0 days |
| Apr. 7, 2023 | Votaw files a second speedy-trial motion to dismiss.<br><br>*Tertiary tolling event; speedy-trial time is tolled pursuant to R.C. 2945.72(E).* | 0 days |
| June 15, 2023 | The Supreme Court of Ohio assigns a visiting judge to preside over Votaw's case.<br><br>*Speedy-trial time remains tolled due to Votaw's pending motions to dismiss.* | 0 days |
| June 27, 2023 | The visiting judge overrules Votaw's speedy-trial motions.<br><br>*Speedy-trial time resumes running on June 28.* | 0 days |
| July 18, 2023 | Votaw files a motion for the trial court to reconsider its decision overruling his speedy-trial motions and requests an evidentiary hearing on the matter.<br><br>*Speedy-trial time is tolled pursuant to R.C.* | 21 days (June 28 to July 18) |

| | *2945.72(E).* | |
|---|---|---|
| Aug. 14, 2023 | The evidentiary hearing on Votaw's motion for reconsideration is continued at Votaw's request.<br><br>*Speedy-trial time remains tolled.* | 0 days |
| Aug. 28, 2023 | The trial court holds an evidentiary hearing on Votaw's motion for reconsideration.<br><br>*Speedy-trial time remains tolled pending the trial court's decision on Votaw's motion for reconsideration.* | 0 days |
| Sept. 26, 2023 | On reconsideration, the visiting judge once again overrules Votaw's speedy-trial motions.<br><br>*Speedy-trial time resumes running on Sept. 27.* | 0 days |
| Oct. 24, 2023 | Votaw pleads no contest to murder with a firearm specification. | 28 days (Sept. 27 to Oct. 24) |
| TOTAL SPEEDY-TRIAL DAYS COUNTED = | | 73 days (8 + 16 + 21 + 28 = 73) |

{¶ 38} Because Votaw's statutory right to a speedy-trial was not violated, Votaw's first assignment of error is overruled.

**Second Assignment of Error**

{¶ 39} Under his second assignment of error, Votaw asserts that his no contest

plea was rendered invalid due to the trial court's participation in the plea-negotiation process. Specifically, Votaw claims that the trial court induced him to enter a no contest plea by expressing its opinion that his case should be appealed on the speedy-trial issue raised in his motions to dismiss. We disagree with Votaw's argument.

{¶ 40} When reviewing the validity of a defendant's plea, "[a]n appellate court must determine whether the record affirmatively demonstrates that [the] plea was knowing, intelligent, and voluntary[.]" *State v. Russell*, 2012-Ohio-6051, ¶ 7 (2d Dist.), citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). "If a defendant's plea is not knowing, intelligent, and voluntary, it 'has been obtained in violation of due process and is void.'" *State v. Carter*, 2022-Ohio-206, ¶ 19 (2d Dist.), quoting *Russell* at ¶ 7. "A plea, if coerced or induced by promises or threats renders the plea involuntary." *State v. Bodine*, 2023-Ohio-2197, ¶ 7 (3d Dist.), citing *State v. Lawson*, 2018-Ohio-4922, ¶ 20 (3d Dist.).

{¶ 41} "An appellate court considers the totality of the record to determine whether a trial judge's participation in plea negotiations affected the voluntariness of the plea." *State v. Newell*, 2024-Ohio-939, ¶ 19 (10th Dist.), citing *State v. Finroy*, 2010-Ohio-2067, ¶ 7 (10th Dist.). In *State v. Byrd*, 63 Ohio St.2d 288 (1980), the Supreme Court of Ohio strongly discouraged judicial participation in plea negotiations but found that such participation did not render a plea per se involuntary. *Id.* at 293. Rather, *Byrd* explained that such participation requires careful scrutiny to determine whether the judge's active conduct affected the voluntariness of the plea by leading the defendant to believe that he could not get a fair trial either because the judge thinks a trial is a futile exercise or because the judge would be biased against him. *Id.* at 293-294; *accord State v. Swaney*,

2020-Ohio-210, ¶ 16 (2d Dist.); *Bodine* at ¶ 8, citing *Lawson* at ¶ 20.

{¶ 42} In *Byrd,* the trial judge "took a very active role in arranging the plea bargain. In essence, he negotiated with the assistant prosecuting attorney." *Byrd* at 290. "In addition to negotiating the bargain, the trial judge indicated to Byrd that he thought it was a 'pretty good' deal.' " *Id.* Moreover, "[t]he judge told Byrd that if he didn't accept the deal, he would be in for a long trial which would not be 'a picnic[.]' " *Id.* The trial judge also arranged meetings with Byrd's family members and asked them to convince Byrd to enter a guilty plea. *Id.* 289-290. "[B}ecause of the trial judge's active efforts to secure [Byrd's] plea," the Supreme Court found that Byrd's guilty plea was involuntary and constitutionally void. *Id.* at 294.

{¶ 43} In this case, the trial court made one comment at the evidentiary hearing indicating that it was "curious" as to how this court would decide the case if it were appealed on the speedy-trial issue. Evidentiary Hearing Tr. (Aug. 28, 2023), p. 54. The trial court also made the following comments during Votaw's plea hearing:

THE COURT: . . . No contest essentially is the statement, I'm not arguing about the facts of the case, but not admitting guilt. Now, the importance of that plea, what we're talking about right now, is that it preserves, it saves your right to have an appeal of pretrial issues. So if the Court is erroneous in its decision with regard to speedy trial, for instance, your lawyer has argued that appropriately, so very diligently. If I got that decision

wrong, then the Court of Appeals will have authority to review that and then make some remedy. So the importance of the no contest plea is to have an appellate lawyer ask the Court of Appeals to review my work. Do you understand that?

THE DEFENDANT: Yes, your Honor.

*THE COURT:* *I think we talked about that previously in pretrials, maybe even inviting that; do you understand?*

THE DEFENDANT: Yes, your Honor.

. . .

THE COURT: [Defense counsel] and I have had a lot of years together, and he understands I often invite cases to go to the Court of Appeals. This is one that should because there's not a lot of jurisprudence on this particular issue, so the State has to kind of work its way through, how does this all shake out. My job is to follow the law, so I make a decision based on, not my personal beliefs, but based upon what the law says. I found a case, one that guided my decision in all of the State of Ohio. That's not real deep jurisprudence. Right or wrong, it is important, but that's why this case

needs to go to the Court of Appeals because they have

another breath of fresh air, somebody else to look at it.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

(Emphasis added.) Plea Hearing Tr. (Oct. 24, 2023), p. 6-7 and 9-10.

{¶ 44} Although the trial court's comments during the plea hearing mentioned that the court had had pretrial discussions with Votaw about Votaw's appealing the trial court's ruling on the speedy-trial issue, unlike *Byrd*, nothing in the record suggests that the trial court actively participated in the parties' plea negotiations. The aforementioned statements by the trial court simply indicated that the court invited Votaw to enter a no contest plea—rather than a plea of guilty—so that Votaw could preserve the speedy-trial issue for appeal. Inviting a defendant to enter a no contest plea so that he or she may preserve an issue is not the same as making statements or engaging in conduct that discourages a defendant from taking his or her case to trial, like the trial court did in *Byrd*. Simply stated, there is nothing in the record indicating that the trial court participated in the plea negotiation process or that the trial court said or did anything to dissuade Votaw from taking his case to trial. We also find it significant that the trial court's comments at the plea hearing did not discuss Votaw's likelihood of success on appeal. Rather, the trial court's comments simply expressed its opinion that the speedy-trial issue should be appealed given the dearth of case law on that particular issue. Because Votaw could have appealed the speedy-trial issue even if he had taken his case to trial, it cannot be said that the trial court's comments about the need to appeal the speedy-trial issue

induced Votaw to forego a trial and enter a no contest plea.

**{¶ 45}** Having considered the totality of the record, we do not find that the trial court participated in the plea negotiation process or otherwise induced Votaw to enter a no contest plea. Rather, the record indicates that Votaw entered his no contest plea voluntarily. Therefore, Votaw's claim that his no contest plea was invalid lacks merit.

**{¶ 46}** Votaw's second assignment of error is overruled.

## Conclusion

**{¶ 47}** Having overruled both of Votaw's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.